The Honorable Ralph G. Ranney Chair Florida Statewide Advocacy Council 1317 Winewood Boulevard Building 1, Suite 401 Tallahassee, Florida 32399-0700
Dear Mr. Ranney:
You have asked for my opinion on substantially the following question:
Are either the Florida Statewide Advocacy Council or the Florida local advocacy councils authorized to conduct site visits of Department of Juvenile Justice facilities in the absence of a complaint of a violation of the constitutional or human rights of a client as that term is defined in section 402.164(2)(a), Florida Statutes?
In sum:
Neither the Florida Statewide Advocacy Council nor the Florida local advocacy councils have authority to conduct site visits of Department of Juvenile Justice facilities in the absence of a complaint of a violation of the constitutional or human rights of a client as that term is defined in section 402.164(2)(a), Florida Statutes.
The intent of the Legislature in creating the Florida Statewide Advocacy Council and the Florida local advocacy councils is to
"have volunteers operate a network of councils that shall, without interference by an executive agency, undertake to discover, monitor, investigate, and determine the presence of conditions or individuals that constitute a threat to the rights, health, safety, or welfare of persons who receive services from state agencies."[1]
Additionally, the Legislature expressed its intent that "the monitoring and investigation shall safeguard the health, safety, and welfare of consumers of services provided by these state agencies."[2]
The Florida Statewide Advocacy Council functioned prior to July 1, 2000, as the Statewide Human Rights Advocacy Committee. Those councils currently designated as local advocacy councils were formerly known as district human rights advocacy committees. These entities were created within the Department of Health and Rehabilitative Services to serve as "an independent third-party mechanism for protecting the constitutional and human rights of any client within a program or facility operated, funded, licensed, or regulated by the Department of Health and Rehabilitative Services."[3] Historically, it has been the position of this office that access to client records, files, and reports by a human rights advocacy committee is limited to information that has been disclosed to the Department of Health and Rehabilitative Services, now the Department of Children and Family Services.[4]
The Legislature amended these statutory provisions during the 2000 legislative session as reflected in Chapter 2000-263, Laws of Florida. In addition to renaming the statewide and district human rights advocacy committees, the Legislature provided an intent provision and defined the terms "client" and "client services" as they are used in sections 402.164-402.167, Florida Statutes. As the staff analysis for this chapter indicates, the Legislature intended to expand the authority of the committees by linking the monitoring powers of these entities to certain specific statutory programs rather than to the Department of Children and Families.[5]
According to the Senate Staff Analysis and Economic Impact Statement for CS/CS/SB 340, subsequently designated Chapter 2000-263, Laws of Florida, these amendments would have the following impact:
"The individuals for whom the SHRAC and the district HRACs' investigative and monitoring service and authority would apply is designated based on the client groups of identified sections and their applicable chapters in Florida Statute that are specified in the definition of "client," instead of based on individuals receiving programs and services offered by the Department of Children and Family Services, as is currently the case."
The definition of "client services" extends the investigative and monitoring authority of the SHRAC and the district HRACs to any service received by a client of the identified section and applicable chapter, regardless of its state agency location.[6]
The Legislature's intent was to tie the powers and duties of the advocacy committees to the statutory programs named, rather than limiting that power by specifying that only programs of the Department of Children and Families were within the scope of action by the advocacy committees. Thus, despite the relocation of certain programs from the former Department of Health and Rehabilitative Services to other agencies, the advocacy committees retain jurisdiction to monitor such programs.
The statute defines the scope of the advocacy committees' authority by providing a specific definition for the terms "client" and "client services" for purposes of sections402.164-412.167, Florida Statutes. Section 402.164(2)(a), Florida Statutes, provides:
"`Client' means a client as defined in s. 393.063,[7] s.394.67,[8] s. 397.311,[9] or s. 400.960,[10] a forensic client or client as defined in s. 916.106,[11] a child or youth as defined in s. 39.01,[12] a child as defined in s. 827.01,[13] a family as defined in s. 414.0252, a participant as defined in s. 400.551,[14] a resident as defined in s. 400.402,[15] a Medicaid recipient or recipient as defined in s. 409.901,[16] a child receiving childcare as defined in s. 402.302, a disabled adult as defined in s. 410.032[17] or s. 410.603,[18] or a victim as defined in 39.01[19] or s. 415.102[20] as each definition applies within its respective chapter."
With the exception of only two citations relating to the Department of Elderly Affairs,[21] each of the chapters in which these definitions appear is a chapter dealing with the services provided by the Department of Children and Family Services. For purposes of this section, "client services" are defined as "services which are provided to a client by a state agency or a service provider operated, funded, or contracted by the state."[22] The scope of client services is circumscribed by the definition of client and this limitation is recognized by the legislative history discussed above. The seemingly broad language of the "client services" definition takes its meaning from the definition of "[c]lient" contained in section 402.164(2)(a), Florida Statutes.[23]
Nothing in either the legislative history surrounding the enactment of Chapter 2000-263, Laws of Florida, or in sections402.164-402.167, Florida Statutes, authorizes advocacy councils to monitor Department of Juvenile Justice facilities in the absence of a complaint. There are no references to Chapters 984 or 985, Florida Statutes, relating to the Department of Juvenile Justice, anywhere in sections 402.164-402.167, Florida Statutes, or within the definition of a "client" or "client services."
In sum, therefore, it is my opinion that the Florida Statewide Advocacy Council and the Florida local advocacy councils have no authority to conduct site visits of Department of Juvenile Justice facilities in the absence of a complaint of a violation of the constitutional or human rights of a client as that term is defined in section 402.164(2)(a), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 402.164(1)(a), Fla. Stat.
[2] Section 402.164(1)(b), Fla. Stat.
[3] See, ss. 402.165(1) and 402.166(7)(a), Fla. Stat. (1995).
[4] See, Ops. Att'y Gen. Fla. 99-69 (1999) (The Statewide Human Rights Advocacy Committee or a district human rights advocacy committee may access clinical and legal records for patients committed to a designated Baker Act receiving or treatment facility, but does not have access to records of patients admitted to other hospitals or facilities); 98-10 (1998) (committee may have access to client files, records, and reports of a domestic violence center disclosed to the DCF, but may not conduct unannounced site visits of such centers absent a specific complaint); 96-60 (1996) (committee has no access to client files, records, and reports of child protection teams until the information has been disclosed to DCF).
[5] See, Alexdex Corporation v. Nachon Enterprises, Inc.,641 So.2d 858 (Fla. 1994); Byte International Corporation v. MauriceGusman Residuary Trust Number 1, 629 So.2d 191 (Fla. 3d DCA 1993), for the proposition that the legislative history of a statute may be used to illuminate legislative intent.
[6] See, Florida Senate Staff Analysis and Economic Impact Statement for CS/SB 340, Children and Families Committee, dated March 16, 2000.)
[7] Section 393.063(5), Fla. Stat., defines "[c]lient" as "any person determined eligible by the department for developmental services."
[8] Section 394.67(3), Fla. Stat., defines "[c]lient" to mean "any individual receiving services in any substance abuse or mental health facility, program, or service, which facility, program, or service is operated, funded, or regulated by the agency and the department or regulated by the agency."
[9] Section 397.311(6), Fla. Stat., defines "[c]lient" as "a recipient of alcohol or other drug services delivered by a service provider but does not include an inmate pursuant to part VIII unless expressly so provided."
[10] Section 400.960(5), Fla. Stat., defines a "[c]lient" as "any person determined by the department [Department of Children and Family Services] to be eligible for developmental services."
[11] Section 916.106(7), Fla. Stat., defines a "[f]orensic client" or "client" to be "any defendant who is mentally ill, retarded, or autistic and who is committed to the [Department of Children and Family Services] pursuant to this chapter[.]"
[12] Section 39.01(12), Fla. Stat., defines a "[c]hild" or "youth" to mean "any unmarried person under the age of 18 years who has not been emancipated by order of the court."
[13] Section 827.01(2), Fla. Stat., defines a "[c]hild" for purposes of this chapter dealing with the abuse of children as "any person under the age of 18 years."
[14] A "[p]articipant" for purposes of section 400.551, Fla. Stat., is defined in subsection (8) as "a recipient of basic services or of supportive and optional services provided by an adult day care center."
[15] Section 400.402(20), Fla. Stat., defines "[r]esident" to mean "a person 18 years of age or older, residing in and receiving care from a [nursing home or assisted living] facility."
[16] Section 409.901(18), Fla. Stat., defines a "Medicaid recipient" or "recipient" to mean "an individual whom the Department of Children and Family Services, or, for Supplemental Security Income, by the Social Security Administration, determines is eligible, pursuant to federal and state law, to receive medical assistance and related services for which the agency may make payments under the Medicaid program."
[17] Section 410.032(2), Fla. Stat., defines a "[d]isabled adult" as "any person at least 18 years of age, but under 60 years of age, who is not eligible for vocational rehabilitation services and who has one or more permanent physical or mental limitations that restrict his or her ability to perform the normal activities of daily living and impede his or her capacity to live independently."
[18] Section 410.603(2), Fla. Stat., defines the term "[d]isabled adult" as "any person at least 18 years of age, but under 60 years of age, who has one or more permanent physical or mental limitations which restrict his or her ability to perform the normal activities of daily living and impede his or her capacity to live independently or with relatives or friends without the provision of community-based services."
[19] Section 39.01(71), Fla. Stat., defines a "[v]ictim" as "any child who has sustained or is threatened with physical, mental, or emotional injury identified in a report involving child abuse, neglect, or abandonment, or child-on-child sexual abuse."
[20] Section 415.102(25), Fla. Stat., defines a "Victim" as "any vulnerable adult named in a report of abuse, neglect, or exploitation."
[21] Sections 400.402 and 400.551, Fla. Stat., are contained in chapters administered by the Department of Elderly Affairs.
[22] Section 402.164(2)(b), Fla. Stat.
[23] See, Turnberry Isle Resort and Club v. Fernandez,666 So.2d 254 (Fla. 3d DCA 1996) (under the doctrine of "noscitur asociis", the meaning of statutory terms, and the legislative intent behind them may be discovered by referring to words associated with them in the statute); Ops. Atty Gen. Fla. 00-07 (2000) (while staff analysis refers to "invoices," that term should be construed in light of the other types of information referenced); 94-12 (1994); 90-55 (1990) (terms of section should be construed in connection with, and their meaning ascertained by reference to, the other words and phrases of the section with which they are associated.